**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**WOLTERS KLUWER FINANCIAL SERVICES**
**INC.,**
                    **Plaintiff,**　　　　　　　　　　**07 CV 2352 (HB)**
　　　　　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM**
　　　　　　　　　　　　　　　　　　　　　　　　　**OPINION &**
　　　　　　　　　　　　　　　　　　　　　　　　　**ORDER**

    **-against-**

**SCIVANTAGE, ADNANE CHARCHOUR,**
**SANJEEV DOSS, CAMERON ROUTH AND**
**GREGORY ALVES,**
                    **Defendants.**
-----------------------------------------------------------------x
**Hon. Harold Baer, Jr., District Judge:**

      Plaintiff Wolters Kluwer Financial Services ("Plaintiff"), through its counsel, Dorsey & Whitney LLP,[1] moved this Court on May 3, 2007 to allow Plaintiff to use, in the actions <u>Wolters Kluwer Financial Services Inc. and CCH Inc. v. Scivantage, Inc. et. al.</u>, No. 1:07-cv-10729 (D. Ma.) and <u>Scivantage Inc. v. Wolters Kluwer, N.V.</u>, No. 07-cv-3329 (S.D.N.Y.), transcripts of "attorneys' eyes only" depositions that Plaintiff had taken of the individual Defendants in this action, No. 07-cv-2352 (S.D.N.Y.).

      Because the Protective Order in this action that governs "attorneys' eyes only" material prohibits the use of such "attorneys' eyes only" material in "any other litigation proceeding," and for additional reasons articulated below, Plaintiff's motion is DENIED.

### I.　　BACKGROUND

      Generally, only the background that is directly relevant to the issues presented in this Motion will be provided here.

    A.　<u>Depositions of Defendants</u>

      On March 29, 2007, by written Order, <u>inter alia</u>, and after an extensive plea by

---

[1] Plaintiff has also retained co-counsel from Jenner & Block LLP in this action. Co-counsel from Jenner & Block filed a notice of appearance in this action on May 1, 2007. However, this motion, filed on May 3, 2007, was signed by Ms. Kristan Peters of Dorsey & Whitney, who had served as Plaintiff's lead counsel at least up to Jenner & Block's entry into this case. Jenner & Block counsel were not listed on this motion.
On May 17, 2007, Dorsey & Whitney moved to withdraw from representation of their client in this action. Leave of this Court to withdraw was granted on May 18, 2007.

Plaintiff as to their urgency, I ordered depositions to be expedited and that the four individual Defendants in this action – Sanjeev Doss, Cameron Routh, Gregory Alves, and Adnane Charchour – be deposed on April 2 and April 3, 2007.

The following day, March 30, 2007, at the close of business, Plaintiff moved the Part I emergency motions judge, the Honorable Kevin Castel, to compel the depositions to go forward on April 2 and 3.[2] Defendants, on March 29, 2007, had proposed a confidentiality order to Plaintiff to govern discovery in this action, which provided for designations of material as "confidential" or "attorneys' eyes only." Plaintiff had refused to stipulate to Defendants' proposed confidentiality order at that time. Judge Castel, via an untranscribed telephone conference, ordered the depositions to go forward on an "attorneys' eyes only" basis until further Order by myself.[3]

Following the depositions of April 2 and 3,[4] I again reiterated on April 6 that "depositions and the fruits of those depositions" would be on an "attorneys' eyes only" basis.[5] I requested proposed confidentiality orders from both parties.

---

[2] Later on March 29, 2007, following Defendants' representations that Defendants could not humanly produce the extensive expedited discovery requested by Plaintiff, by letter to counsel, I adjourned the deadline to produce discovery from March 30, 2007 to April 5, 2007. I did so in an effort to accommodate Plaintiff's requests for discovery before Plaintiff's taking of depositions. See, e.g., Transcript of Oral Argument, March 28, 2007 ("Tr."), at 65-66 (Plaintiff: "I need to equip myself with some documentation… I can't take a deposition without having the documents and the information."); see also Letter of Kristan Peters to Hon. Harold Baer, March 29, 2007, 5:20 P.M., stating that Plaintiff "has been hobbled in our ability to prepare for the depositions on Monday," and attaching a proposed "Emergency Discovery Order," that requested the Court to order extensive discovery to be produced by 5 P.M., the following day, March 30, 2007.

In my March 29 letter, I stated that "[t]he plaintiff will have the documents and the time to examine them before the depositions. Obviously this will require that the depositions be scheduled for later dates [but] that's plaintiff's choice to make."

Plaintiff made the choice to go forward with the depositions (without the documents) and urged the Part I judge to compel the depositions on April 2 and 3.

[3] The exact nature of Judge Castel's order, and the subsequent conduct of Plaintiff's counsel at the April 2 and 3 depositions, is disputed by the parties, and is the subject in part of a motion for contempt and sanctions filed by Defendants on April 24, 2007, which will be addressed in a future Opinion.

[4] Defendant Gregory Alves was deposed on April 2, 2007. Defendant Sanjeev Doss was deposed on April 2, 2007, and again on April 9, 2007. Defendant Cameron Routh was deposed on April 3, 2007. Defendant Adnane Charchour was deposed on April 11, 2007. Additionally, Plaintiff's lead counsel, on April 6, 2007, made a statement on the record to the court reporter present. Thus, six transcripts are at issue in this motion.

[5] My April 6 directive responded to, inter alia, disputes between the parties as to whether Judge Castel's "attorneys' eyes only" order encompassed in-house counsel. Defendants' proposed confidentiality order, provided to Plaintiff on March 29, did not envision "attorneys' eyes only" material to be disclosed to in-house counsel. I made clear that generally, and specifically in this case, "attorneys' eyes only" did not permit in-house counsel to view the discovery.

B. Protective Order

Following the submission of proposed confidentiality orders from both sides, I ordered, on April 12, 2007, that Defendants' proposed confidentiality order, with minor changes made by the Court, would govern the "disclosure and use of confidential discovery information in this action." See Confidentiality Stipulation and Protective Order, April 12, 2007 ("Protective Order") at 1.

The Protective Order provides, inter alia, that "Protected Material requested and exchanged herein shall be used only for the purpose of the prosecution or defense of this action… [and] shall not be used for any business, commercial, or competitive purpose, or used in any other litigation proceeding." Protective Order ¶ 7(a). Additionally, the Protective Order provides more specifically that "In the absence of written permission from the Producing Party or Designating Party, as applicable, or an order of the Court, any Protected Material consisting of or containing "ATTORNEYS' EYES ONLY INFORMATION" shall be used solely for purposes of the prosecution and defense of the above-entitled litigation…" Protective Order ¶ 4(c).

The Protective Order provides that "Discovery Material designated as CONFIDENTIAL INFORMATION or ATTORNEYS' EYES ONLY INFORMATION shall be treated by each Receiving Party as confidential according to the category designated for such material unless and until the Court rules to the contrary or the Producing Party or Designating Party, as applicable, agrees otherwise." Protective Order ¶ 4(a). The Protective Order does provide for a process by which a party may challenge the propriety of a confidentiality designation. Protective Order ¶ 8.[6] However, the Protective Order reiterates, in the same section that addresses "challenges," that "Any document designated "CONFIDENTIAL INFORMATION" or "ATTORNEYS' EYES ONLY INFORMATION" shall enjoy the protection of such designation until the issue relating to the propriety of the designation has been resolved." Protective Order ¶ 8.

---

[6] The Protective Order provides that "All challenges to the propriety of a confidentiality designation shall first be made in writing, within three (3) court days of the designation, by letter or other document identifying the specific Protected Material challenged.… [W]ithin three court days of such a challenge, the Producing Party or Designating Party, as applicable, shall substantiate the basis for such designation in writing to the objecting Party. If the dispute still cannot be resolved, the Party challenging the designation may seek appropriate relief from the Court within three days of the opposing Party's having provided the basis for such designation, else such challenge is waived." Protective Order ¶ 8.

3

The Protective Order also provides, inter alia, that "Counsel for the Receiving Party shall be permitted to retain… a copy of all depositions, including exhibits and deposition evaluations containing Protected Material." Protective Order ¶ 12.

The Protective Order provides that "[t]he obligations created by this Order shall survive the termination of this lawsuit unless otherwise modified by the respective Court in each action." Protective Order ¶ 13. The Protective Order also provides that "The Court shall retain jurisdiction, even after termination of this lawsuit, to enforce this order and to make such amendments and modifications to this Order as may be appropriate." Id.

C. Plaintiff's Voluntary Dismissal and Subsequent Actions

On Friday, April 13, 2007, at some time between approximately 3:30 P.M. and the close of business, Plaintiff voluntarily dismissed this action pursuant to Fed. R. Civ. P. 41(a)(1)(i).[7] It appears to be undisputed that on April 13, subsequent to approximately 3:30 P.M.: 1) Defendants produced tens of thousands of pages of documents to Plaintiffs, as per their production deadline, in addition to tens of thousands of pages that Defendants had previously produced; and 2) Plaintiffs did not produce any discovery to Defendants, by their production deadline, beyond the approximately 500 pages of documents that Plaintiffs had previously produced.[8]

---

[7] Plaintiff's counsel stated then, and states now, that its voluntary dismissal was in response to Defendants' Motion to Dismiss Plaintiff's Complaint of April 9, 2007, in which Defendants argued, inter alia, that Plaintiffs lacked personal jurisdiction over Defendants in New York. (Defendants also argued that Plaintiffs lacked subject matter jurisdiction over this trade secrets action, and generally failed to state claims on the merits.)

[8] Plaintiff's counsel's actions in relation to its voluntary dismissal, as noted above, are the subject of Defendants' motion for contempt and sanctions, and will be addressed in a future opinion.

For disputed reasons which are the subject of the above-mentioned motion for contempt and sanctions, Defendants took no depositions of Plaintiff's witnesses before Plaintiff voluntarily dismissed this action.

Regarding the approximately 500 pages of documents produced by Plaintiffs to Defendants, Defendants aver that the documents are generally publicly available material such as press releases. Plaintiff has disputed this characterization. See Transcript of May 1, 2007, at 7 (Plaintiff: "I produced 500 pages of documents early…" Court: "[T]hey are mostly just press releases." Plaintiff: "That's not true.")

Defendants subsequently provided a copy of these documents to the Court for *in camera* review. After *in camera* review, it is clear the vast majority, if not all, of the documents are generally publicly available. In addition to press releases, the documents are comprised of news articles and printouts of information from Plaintiff's website.

Plaintiff characterized these documents on May 1 as "important and valuable… and responsive documents." See Transcript of May 1, 2007, at 7. Plaintiff also requested on May 1 that Defendants return these documents to Plaintiff, since without their return, "[Defendant] would see our road map and [to] be entitled to that is sort of like unilateral disarmament." See Transcript of May 1, 2007, at 7-8. Defendants

4

Also, at some time Friday, April 13, 2007, Plaintiff, along with an additional co-Plaintiff, CCH Incorporated, a related corporate entity to Plaintiff, filed a complaint in the District of Massachusetts (No. 07-cv-10729) against the Defendants in this action, as well as an additional Defendant, Bahwan Cybertek Inc. Plaintiffs requested, inter alia, a permanent injunction in that action.

On Sunday, April 15, 2007, Plaintiff's lead counsel emailed Defendant's counsel and stated, "[T]he previous matter has concluded and a new matter has replaced it."[9] Email of Kristan Peters to James Chou, April 15, 2007, attached to Declaration of Richard J. Rabin, April 24, 2007, Ex. 37.

On Monday morning, April 16, 2007, Defendants informed the Court of Plaintiffs' voluntary dismissal. Defendants also alleged that Plaintiff had used information from the "attorneys' eyes only" depositions in this action in its complaint filed in Massachusetts.

In a conference call with Plaintiff's co-counsel, Marc Reiner, and Defendants' counsel, I ordered that Plaintiffs return all discovery in their possession to the Court.[10] I agreed to take custody of the discovery in an effort to broker a compromise between the parties, as Plaintiff voiced concerns that it did not want to return discovery directly to Defendants, and Defendants voiced concerns as to what might happen if Plaintiff kept the discovery.

On Tuesday, April 17, 2007, after Plaintiff informed the Court it had made copies of the discovery for its potential use in Massachusetts (after I ordered the return of the discovery),[11] I reiterated by email, "in writing to be certain there is no misunderstanding,

---

returned the documents to Plaintiff (with the above-mentioned copy to the Court) the next day.

[9] The context of the statement was that as a consequence, depositions for the week of April 16 through 20 were cancelled.

[10] Plaintiff's counsel's actions at this time, as noted above, are the subject of Defendants' motion for contempt and sanctions, and will be addressed in a future opinion.

[11] Mr. Reiner, on Monday, April 16, at 10:18 A.M., prior to the conference call, had represented to the Court that his law firm had received a document production from Plaintiffs on Friday, April 13, consisting of a "single manila envelope that apparently contains discs…" Email of Marc Reiner to Mark Noferi, April 16, 2007, at 10:18 A.M. Mr. Reiner represented that the envelope, at that time, "remain[ed] sealed and unopened," and that "[t]he envelope will remain unopened until after [Defendants' lead counsel] and [Plaintiff's lead counsel] have had the opportunity to resolve the matter."

On Tuesday, April 17, at approximately 2:45 P.M., the Court received, as well as 22 boxes of discovery provided by Defendants to Plaintiffs on April 11, the aforementioned envelope, which was instead unsealed and opened, and contained three CD-Roms. My law clerk informed the parties that he had received the

5

that Plaintiff shall return all discovery in its possession, this set to Defendants, by noon tomorrow," April 18, 2007 (emphasis intact).

On Wednesday, April 18, 2007, Defendants forwarded to the Court Plaintiff's letter to Defendants of April 17, in which Plaintiff objected to the designation of the depositions as "attorneys' eyes only," and provided its own designations of "attorneys' eyes only" material in the six transcripts. (It is worth noting that the Protective Order provides that "Discovery Material… may be so designated by such Producing Party…" and does not similarly provide that the Receiving Party may designate material. Protective Order ¶ 3(a).) Defendants also forwarded to the Court Plaintiff's subsequent letter to Defendants of April 18, in which Plaintiff "clarified" its letter of April 17 to state that it "object[ed] to the designation of any of the defendants' deposition transcripts as "Confidential" or "Attorneys' Eyes Only." Defendants argued that "plaintiff has voluntarily dismissed this suit, leaving no valid reason to… use [the transcripts] in any new action" and specifically requested that Plaintiff turn over to Defendants all copies and originals of the deposition transcripts in this action.

Also on Wednesday, April 18, Defendants' counsel represented that he had received an incomplete set of copies of CD-Roms that I had previously ordered Plaintiffs to return to Defendants.[12] On Thursday, April 19, Mr. Reiner represented that he could not answer questions about the missing CD-Roms, as he had been transferred off the case due to "internal staffing issues." Mr. Reiner represented that other associates or partners familiar with the matter were currently unavailable.

Later on Thursday, April 19, I contacted the managing partner at Dorsey & Whitney, who put me in touch with another partner, Zachary Carter. Mr. Carter informed me that he would arrange for the return of any transcripts of depositions in this action to

---

unsealed and opened envelope.

At 3:35 P.M. that day, Mr. Reiner responded and informed the Court that his law firm had made "copies of those documents… in connection with a motion we plan to file shortly," and reiterated, at 4:15 P.M., that "[c]opies of the documents were made so that Judge Stearns may have a copy." See Email of Marc Reiner to Mark Noferi, April 17, 2007, 3:35 P.M.; Email of Marc Reiner to Mark Noferi, April 17, 2007, 4:15 P.M.

Thus, with the (ultimately incorrect) understanding that the Court now possessed all discovery provided to Plaintiff by Defendants, I ordered the return of all discovery directly to Defendants, rather than the Court (thus adding the proviso, "this set to Defendants.").

[12] Specifically, Defendants represented that they had received two CD-Roms, rather than the three CD-Roms Defendants had provided to Plaintiff and Plaintiff had provided to the Court on April 17.

6

the Court by Friday, April 20, 2007. Also on Thursday, April 19, Defendants submitted a proposed Order that would have required Plaintiff to return and/or destroy all copies of transcripts taken in this action.

On Friday, April 20, Plaintiff's lead counsel, Ms. Peters, wrote this Court and, inter alia, stated that Mr. Carter "has asked an associate to retrieve all transcripts that could be located relating to the Scivantage matter and has had them provided to the Court."[13] Concomitantly, Plaintiff's counsel provided to the Court an original copy, marked "original," and a copy, marked "copy," of the five substantive depositions of Defendants taken in this action.[14] All copies were stamped "attorneys' eyes only." Generally, the words "attorneys' eyes only" appeared at the top of each page that contained substantive deposition testimony. Plaintiff also provided its own proposed order that requested that Defendants' designations of the depositions as "attorneys' eyes only" be deemed "null and void."

On Monday, April 23, Defendants' counsel (and Mr. Doss' counsel, separately) wrote the Court and alleged that Plaintiff, in fact, continued to retain transcripts of depositions taken in this action. Later that afternoon, Plaintiff's counsel emailed the Court and requested until Wednesday, April 25, to respond to Mr. Doss' submission before this Court rendered any decision.

On Tuesday, April 24, at 2:41 P.M., Defendants' counsel informed this Court by email that a hearing regarding discovery matters at Plaintiff's request was scheduled in the Massachusetts action, No. 07-cv-10729, for 11 A.M., Wednesday, April 25.

On Tuesday, April 24, at 4:45 P.M., via an email, the parties were reminded that my April 16 verbal order "ordered discovery returned to the Court," "with the intention that the parties would not utilize such discovery following [my] April 16 verbal order." See Email of Mark Noferi, April 24, 2007, 4:45 P.M. Further, my law clerk, at my direction, asked Plaintiff's lead counsel, as clearly as I knew how, to "represent to the Court whether [her] law firm currently possesses, or has possessed since Friday, April 20,

---

[13] In that same letter of April 20, Plaintiff's lead counsel quoted verbatim approximately 70 lines from one of the aforementioned deposition transcripts.

[14] For the sake of clarification, and risking redundancy, those five substantive depositions were Defendant Gregory Alves, April 2, 2007; Defendant Sanjeev Doss, April 2, 2007, and again on April 9, 2007; Defendant Cameron Routh, April 3, 2007; and Defendant Adnane Charchour, April 11, 2007. See note 4, supra.

7

any copies (in any format) of any transcripts of any depositions taken in this action." Id. I asked Plaintiff's lead counsel to "please identify which copies of which transcripts your law firm possesses, or has possessed, since Friday, April 20." Id. "If [Plaintiff's] law firm does currently possess such copies, [I] direct[ed] [her] firm to return any such copies to this Court by 11 A.M. tomorrow, pending the disposition of the motions currently before the Court." Id.

At some point on Tuesday, April 24, from a review of public court filings, and court filings subsequently provided to this Court by Defendants, Plaintiff filed several motions in the District of Massachusetts action, including a "motion for short order of notice," and a motion for extensive "emergency discovery."[15] Plaintiff's lead counsel's name appeared on the various motions. Plaintiff's lead counsel submitted a declaration, signed by her, and attached prior declarations and exhibits filed in this action, which included substantial portions of the aforementioned "attorneys' eyes only" depositions taken in this action. Plaintiff also requested that the Massachusetts Court issue an order returning the deposition transcripts to Plaintiffs "to use in [the Massachusetts] action."[16] Plaintiff apparently requested the Massachusetts Court at some point to hold a hearing on the motions *ex parte*.[17]

---

[15] See Supplemental Declaration of Richard J. Rabin, May 9, 2007, at Ex. 13. The emergency discovery requested resembled the extensive emergency discovery originally requested by Plaintiff in this action, large portions of which were provided by Defendants to Plaintiff before (or, although it is unclear, arguably concomitant to) Plaintiff's voluntary dismissal of this action. See "Emergency Discovery Order," April 25, 2007, No. 07-cv-10729 (D. Ma.). Additionally, some of the emergency discovery requested in Massachusetts was discovery that Plaintiff had requested in this action and I had denied to Plaintiff as overbroad or unnecessary.

[16] See Memorandum of Law in Support of Order to Show Cause and For Expedited Discovery and Preservation of Documents and Information, April 24, 2007, at 29, No. 07-cv-10729 (D. Ma.).

Notably, when Defendants' counsel emailed the Court at 2:41 P.M. on April 24 and alleged that Plaintiff's lead counsel "has been pressing the Court in Massachusetts for a discovery hearing designed… to try to 'beat' Judge Baer to the punch on these issues," Plaintiff's lead counsel responded to Defendants' counsel and the Court, at 2:52 P.M., and stated, "Your statements… attempting to characterize my motives are completely inappropriate. Nothing new is going to be filed tomorrow in this Massachusetts matter…" (emphasis added).

[17] See Transcript of April 25, 2007, Wolters Kluwer Financial Services Inc. and CCH Inc. v. Scivantage, Inc. et. al., No. 1:07-cv-10729 (D. Ma.), at 4 (Court: "[H]aving read the papers, I am now baffled by the request to hold this hearing *ex parte*… [G]iven the history between the parties, the request for a secret proceeding has me even more concerned than it did at the time it was made.").

Plaintiff originally approached this Court *ex parte* on March 21, 2007 and requested an Order to Show Cause and a temporary restraining order against Defendants. I granted the temporary restraining order based on Plaintiff's *ex parte* representations. After a hearing on March 28, 2007 with both parties represented, I dissolved the temporary restraining order.

8

Plaintiff' lead counsel called my law clerk *ex parte* at the close of business on April 24 and asked whether my order encompassed exhibits, attached to pleadings and motions, that contained transcripts. Plaintiff's lead counsel expressed a concern regarding its "work product." See Email of Kristan Peters, April 24, 2007, 7:33 P.M. ("if the Court were requiring Dorsey to divest itself of critical aspects of its work product, we would have to immediately appeal to the Second Circuit.")[18]

On Wednesday, April 25, at 2:25 P.M., via an email, it was clarified that I did not require, at this time, "Plaintiff to provide copies of exhibits attached to pleadings and motions in this action, if such exhibits contained portions of deposition transcripts. As to other copies of deposition transcripts," I stated my order "stands." I also reiterated that, while as yet unanswered, my request for factual representations stood.[19]

At some point on April 25, 2007, Plaintiff filed a "motion to remove confidentiality designations" and again submitted a proposed order that would declare "Defendants' designations of the depositions in their entirety as CONFIDENTIAL and ATTORNEYS' EYES ONLY" as "null and void."

On Thursday, April 26, after a request by Plaintiff's counsel at 3:05 P.M. that day for another day to respond to my requests for transcripts and factual representations, I emailed Plaintiff's counsel at 4:19 P.M. and once again requested transcripts of any depositions in Plaintiff's possession.[20] Later that day, I pointed Plaintiff's counsel's

---

[18] Plaintiff's counsel also represented that the Court's "email was sent so late that it does not give us sufficient time to respond… as we will be in court tomorrow." See Email of Kristan Peters, April 24, 2007, 7:33 P.M.

[19] On April 25 or 26, Defendant Scivantage filed a complaint against, inter alia, Plaintiff Wolters Kluwer in the Southern District of New York, No. 07-cv-3329, alleging, inter alia, antitrust and abuse of process violations. The Complaint was signed April 25, and stamped "received" on April 26 by the Clerk of this Court.

[20] My email stated, in relevant part:

"On Monday, April 16, I verbally directed that all discovery be returned to the Court. On Tuesday, April 17, I reiterated that order in writing. On Friday, April 20, you appeared to represent that all copies of deposition transcripts were returned to the Court that day. On Tuesday, April 24, I conveyed, through my Clerk, my desire for you to represent whether your law firm currently possesses, or has possessed since Friday, April 20, any copies of deposition transcripts. I directed you to identify those transcripts, if they existed. I also directed you to return them to the Court by 11 AM, Wednesday, April 25.

The night of Tuesday, April 24, you requested clarification as to whether the Judge's directive to return any transcripts encompassed exhibits to pleadings and motions that included portions of transcripts. On Wednesday, April 25, I clarified, although hardly necessary in my view, that I did not, at this time, require you to return exhibits attached to pleadings and motions.

It is now Thursday, April 25. Without modifying the previous orders issued by the Court, I once more want

9

attention to two cases that unsurprisingly, supported the proposition that an attorney may be ordered to turn over "work product" to the Court.[21]

Incredulously, on Friday, April 27, at approximately midday, and having failed to make any substantive response to my April 24 order, Plaintiff's lead counsel provided twenty additional copies of deposition transcripts to the Court, and told the Court that her "colleague made an attempt… to locate the transcripts in the office, and missed some." Plaintiff's lead counsel represented that "most of the transcripts remaining are attorney work product."[22] Plaintiff's lead counsel represented that "some of the attached transcripts that were brought to my attention yesterday for the first time do not appear to be work product privileged."[23] Among those transcripts characterized as "not work product privileged" were clean paper copies of the five substantive depositions of Defendants taken in this case that form the crux of this instant motion. Those copies were all marked "attorneys' eyes only."

On Friday, April 27, at 5:20 P.M, I requested a conference call with counsel for the parties to discuss Plaintiff's request to have the just-delivered copies of transcripts returned so that counsel might use one or more to defend against Defendants' previously-filed motion for contempt and sanctions.[24] I also requested the parties' views regarding

---

any copies of deposition transcripts (excluding exhibits to pleadings and motions that included portions of transcripts), if they do indeed exist in your law firm's possession, returned to the Court by 6:15 P.M. tonight. If you feel the need to submit factual representations in the form of a letter, that letter may be submitted tomorrow by COB."

[21] See In re Murphy, 560 F.2d 326, 336 n. 20 (8th Cir. 1977) (Court, noting that attorney opinion work product is not shielded from "judicial scrutiny," stated, "An attorney may be ordered to deliver his opinion work product to the court for *in camera* inspection."), cited approvingly, In re John Doe Corp., 675 F.2d 482, 493 (2d Cir. 1982).

[22] Plaintiff's counsel indicated that thirteen copies of transcripts were "work product." Those transcripts comprised a bound transcript of Plaintiff's statements on the record on April 6, 2007, marked "original," and a bound copy of that transcript; a bound copy of Doss' deposition of April 2, 2007; a bound copy of Alves' deposition of April 2, 2007; a bound copy of Routh's deposition of April 3, 2007; a bound copy of Doss' deposition of April 9, 2007; and a bound copy of Charchour's deposition of April 11, 2007. Additionally, Plaintiff's counsel provided unbound copies, which she indicated were "work product," of Doss' deposition of April 2, 2007; a rough draft copy of that deposition; Alves' deposition of April 3, 2007, and a duplicate of that copy; Routh's deposition of April 3, 2007; and Doss' deposition of April 9, 2007.

[23] Plaintiff's counsel indicated that seven copies of transcripts were "not work product." Those transcripts comprised unbound paper copies of Doss' April 2, 2007 deposition, and a duplicate copy of that deposition; Alves' April 2, 2007 deposition; Routh's April 3, 2007 deposition, and a second single-sided copy of that deposition; Doss' April 9, 2007 deposition; and Charchour's April 11, 2007 deposition.

[24] In this email, I also stated, "[I]t is my understanding that Ms. Peters' production today of additional transcripts provides me with all sought for materials and Plaintiff (or Plaintiff's counsel) no longer retains in its possession any copies of discovery provided to it by Defendants, including, but not limited to,

10

"a) the effect of the confidentiality order in this action on Plaintiff's request, b) the effect of the Massachusetts litigation, or c) the interplay between those two issues."

On Tuesday, May 1, I held a transcribed conference call with parties' counsel. Plaintiff's lead counsel stated, "Your Honor specifically stated to me that in clarifying its order that all exhibits to previous pleadings were something that I could use…" See Transcript of May 1, 2007, at 16. I corrected Plaintiff's lead counsel and stated, "I never said that you could use them, never…. [U]nder this kind of language that you all agreed to… you can't use them… I said you could keep them because I didn't want them, but I never said you could use them." Id.[25]

I requested letter-briefs of a "couple of pages" from the parties regarding the use of deposition transcripts in other litigation, one from Plaintiff by Thursday, May 3, and an opposition by Defendants by Monday, May 7. See Transcript of May 1, 2007, at 11. Plaintiff submitted a thirteen-page "Motion to Release Transcripts for Use in Continuing Cases" on May 3, in which she moves this Court to allow the use of the deposition transcripts at issue in the Massachusetts Action, No. 07-cv-10729 (D. Ma.), and the New York action filed by Defendants, No. 07-cv-3329 (S.D.N.Y.). Defendants submitted their opposition on May 7. Having requested a letter-brief of a "couple of pages," I denied Plaintiff's request to reply.

On Wednesday, May 2, I returned one (original) copy of the deposition transcripts at issue to Plaintiff's counsel for use in defending against Defendants' motion for sanctions and contempt, with the explicit proviso that such deposition transcripts were not to be used in "any other litigation, including but not limited to the new action in Massachusetts," and that such deposition transcripts would be returned to this Court after Plaintiff's opposition to Defendants' motion for contempt and sanctions.

## II.   STANDARD OF REVIEW

---

documents, deposition transcripts, CD-Roms, etc., and including, but not limited to, electronic copies of such discovery (e.g. electronic copies of documents, deposition transcripts, CD-Roms, etc.), but excluding exhibits attached to motions and pleadings filed in this action that contain portions of transcripts. Plaintiff's counsel, please represent to the Court whether that understanding is correct. (A 'yes' or 'no' answer would be appreciated.)" At 6:23 P.M. that same day, Plaintiff's lead counsel emailed me back and stated that the answer to my question was "yes." Email of Kristan Peters, April 27, 2007, 6:23 P.M.

[25] See also Transcript of May 1, 2007, at 17-18 ("Plaintiff: "Your Honor, if you look at the email that the Court sent on Friday, April 27, you clearly excluded exhibits attached to the motions and pleadings filed in this action." Court: "That's right. To keep, not to use.")

"Whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court."  See, e.g., In re "Agent Orange" Prod. Liab. Litig., 821 F.2d 139, 147 (2d Cir. 1987).  "Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'"  SEC v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001), citing Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 296 (2d Cir. 1979).

### III.  DISCUSSION

As a threshold matter, this Court retains jurisdiction, pursuant to the explicit retention of jurisdiction in the Protective Order, "even after termination of this lawsuit," to "enforce this order and to make such amendments and modifications to this Order as may be appropriate."  Protective Order ¶ 13.  Even if the Protective Order here did not explicitly provide for retention of jurisdiction, this Court would in all likelihood retain the power to supervise disclosure of documents under the Protective Order and modify its terms, if appropriate.  See, e.g., Gambale v. Deutsche Bank AG, 377 F.3d 133, 141 (2d Cir. 2004) ("The court's supervisory power does not disappear because jurisdiction over the relevant controversy has been lost.")

A. The Protective Order Bars Use of Protected Material in "Any Other Litigation Proceeding"

The Protective Order here provides, stated most simply, that "Protected Material… shall not be used… in any other litigation proceeding."  Courts have found similarly-worded Protective Orders to be valid and enforceable, and have indeed imposed sanctions for a party's use of protected documents in other litigation without prior modification of the Protective Order.  See, e.g., On Command Video Corp. v. Lodgenet Entertainment Corp., 976 F. Supp. 917, 920-22 (N.D. Cal. 1997) (where plaintiffs in federal court commenced lawsuit against same defendant in state court and used protected information, Court found plaintiffs in contempt, stating, "The purpose of the Order is to limit the use of confidential information to this case.  By using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms

12

of the Protective Order.");[26] In re Biovail Corp. Securities Litigation, 2007 WL 259933, at *2 (S.D.N.Y. 2007) (where Defendants in federal litigation filed separate complaint in state court that included protected information provided by third-party pursuant to federal litigation, Court restrained Defendants from using any protected material and ordered Defendants to produce all documents to third-party and redact any pleading in any court that contained the protected information);[27] Poliquin v. Garden Way, 154 F.R.D. 29, 32 (D. Me. 1994) (where plaintiff's attorney gave confidential deposition transcript to co-counsel litigating against same defendant in state court, Court directed attorney to destroy documents, noting, although "counsel in any other action against Defendant is free to initiate discovery anew…." plaintiff's counsel was not allowed to use specific depositions produced in reliance on the Protective Order.).[28]

Plaintiff argues that her Massachusetts action is "continuing," not "new," litigation, and thus distinguishable from the caselaw above, because Plaintiff voluntarily dismissed this action pursuant to Fed. R. Civ. P. 41(a)(1)(i) and filed a new complaint in Massachusetts, involving most of the same parties, and many of the same operative facts. However, caselaw holds that a refiled lawsuit after a voluntary dismissal is a "new" and "second" lawsuit. See Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 217 (1947) ("Traditionally, a plaintiff… has had an unqualified right… to take a nonsuit in

---

[26] The On Command Court rejected the contention that there was "no express provision which states that the filing of a subsequent action, which is based on protected confidential information, violates the Protective Order." On Command, 976 F. Supp. 917, 921. "The Protective Order unequivocally bars all uses of confidential materials except one – '[the] analysis of issues presented in this litigation.'" Id. Although it is "technically correct that the filing of a state court action based on confidential information disclosed in this action is not expressly precluded, to construe the language… as permitting plaintiff to engage in such conduct would render said provision meaningless." Id.

The On Command Court also rejected the contention that an "overly restrictive" interpretation of the Protective Order would "immunize" defendant for any "wrongful acts uncovered during this litigation." Id. The Court found that interpretation "untenable," as "there are no restrictions in the Protective Order concerning the addition of claims to this litigation." Id. Plaintiff, in this motion, argues that "there is no justice to be had from allowing such culpable defendants to wiggle out of the evidence of their misdeeds by giving them a free pass…" Memorandum of Law in Support of Plaintiff's Motion to Release Transcripts for Use in Continuing Litigations, at 10. As the On Command Court alluded to, nothing prevented Plaintiff here from litigating their claims against Defendants, or adding claims against Defendants in this litigation in light of new evidence, rather than voluntarily dismissing the action while subject to a Protective Order that prevented use of discovery in "any other litigation proceeding."

[27] The Biovail protective order provided that discovery "may be used or disclosed solely for the prosecution or defense of this Action." In re Biovail Corp. Securities Litigation, 2007 WL 259933, at *1.

[28] The Poliquin protective order provided that confidential materials "shall be used solely for the purpose of litigating Plaintiff's case." Poliquin v. Garden Way, 154 F.R.D. 29, 30.

13

order to file a new action after further preparation, unless the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit."); see also Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Center, 95 F.R.D. 194 (E.D. Pa. 1982) ("[T]he major purpose of a rule 41(a) voluntary dismissal without prejudice is to permit a plaintiff to bring a completely new suit"), aff'd, 721 F.2d 68, 77 (3d Cir. 1983); cf. McCall-Bey v. Franzen, 777 F.2d 1178, 1184 (7th Cir. 1985) (Posner, J.) ("As… the language and history of Rule 41(a) imply, the general purpose of the rule is to preserve the plaintiff's right to take a voluntary nonsuit and start over so long as the defendant is not hurt.").

      As the above caselaw makes clear, the policy underlying a Rule 41(a) voluntary dismissal is that Plaintiff may, in Judge Posner's words, "start over so long as the defendant is not hurt."  It is plausible that a situation might exist in which, notwithstanding a Protective Order like the one here that bars the use of material in "any other litigation proceeding," equity and judicial efficiency might favor that (presumably reciprocal) discovery is used in a new action after a Rule 41(a) dismissal, "so long as the defendant is not hurt."[29]  Here, however, Plaintiff's voluntary dismissal literally hours (if not minutes) before its deadline to provide substantively reciprocal discovery, while having received all of Defendants' documents, and Plaintiff's subsequent use of deposition transcripts in connection with a motion, filed on short notice, in the new Massachusetts action that sought to obtain additional, extensive, and potentially redundant "emergency discovery" raises the spectre that indeed, Defendants may be prejudiced (or may already have been prejudiced) by Plaintiff's efforts to use near-unilateral discovery gained in this action to seek new relief in a new court.

---

[29] For example, Courts have conditioned approval of a plaintiff's voluntary dismissal under Fed. R. Civ. P. 41(a)(2) on *defendants'* ability to continue to use discovery that *defendants* have obtained in the dismissed litigation.  See, e.g., Render v. CONRAIL Co., 1984 U.S. Dist. LEXIS 24882, at *3 (N.D. Ill. 1984) ("As to discovery, it is not uncommon for courts to require, as a condition of voluntary dismissal, that the plaintiff agree not to object to utilization in subsequent proceedings of discovery materials obtained in the first proceedings."); Iraola & Cia, S.A. v. Kimberly-Clark Corp., 31 F. Supp. 2d 1378, 1381 (N.D. Ga. 1998) (similar).  Again, though, as a general matter, the determinative inquiry when considering the procedural import of a voluntary dismissal appears to be potential prejudice to the defendant.  Cf. Hill v. W. Bruns & Co., 498 F.2d 565, 566 (2d Cir. 1974) (where court considered question of whether second maritime suit filed after plaintiff's voluntary dismissal was barred by equitable doctrine of laches, court held that second suit was not barred because defendant did not show prejudice).

14

Plaintiff's argument that the Massachusetts action represents "continuing litigation," rather than "new" litigation, is undercut by the fact that had Plaintiff chosen to "continue" this litigation, Plaintiff simply could have moved, pursuant to 28 U.S.C. § 1404(a), to transfer venue for this litigation to Massachusetts.[30] Indeed, as Plaintiff purportedly dismissed this action and filed the Massachusetts action in response to Defendant's motion to dismiss this action for, inter alia, lack of personal jurisdiction in New York, Plaintiffs might even have sought a stipulation from Defendants to transfer the action. Yet Plaintiff instead voluntarily dismissed this action on its own initiative, despite the Protective Order in place, avoiding its deadline to provide reciprocal discovery. Plaintiff then cancelled depositions (the majority of the remaining depositions being of its witnesses), and stated to Defendants that "[T]he previous matter has concluded and a new matter has replaced it." Plaintiff's conflicting position that "equity" favors treating the Massachusetts action as "new" litigation when it is tactically beneficial, but as "continuing" litigation when that course appears tactically preferable, is, to say the least, troubling.

Thus, I hold that the Protective Order in place in this action does not, and did not, allow the parties to this action to use "confidential" or "attorneys' eyes only" information in another action, including, but not limited to, the Massachusetts action, No. 07-cv-10729, and Defendants' New York action, No. 07-cv-3329.

    B. Plaintiff's Motion to Modify the Protective Order is Denied

Regarding Plaintiff's efforts to move this Court to modify the Protective Order to use protected material in other litigation, Plaintiff's efforts are undercut by Plaintiff's apparent previous use of protected material in Massachusetts on an "emergency" basis, in part to seek the Massachusetts Court's modification of the Protective Order, before this Court had the opportunity to rule upon the issue of the Protective Order.[31] Moreover,

---

[30] The plain language of the Protective Order also undercuts Plaintiff's argument that the Massachusetts litigation is "continuing" litigation. The Protective Order provides that "ATTORNEYS' EYES ONLY INFORMATION" shall be used solely for purposes of the prosecution and defense of the above-entitled litigation…" Protective Order ¶ 4(c). As noted supra, neither the Massachusetts litigation nor Defendants' New York litigation involves the same parties before this Court in this "above-entitled litigation."

[31] Defendant argues that "Plaintiff's instant motion calls for the Court's retroactive blessing on plaintiff's circumvention of the Court's orders." See Defendant's Opposition to Plaintiff's Motion to Release Transcripts For Use in Continuing Cases, May 7, 2007, at 8.

Indeed, and ironically, Plaintiff's counsel used the deposition transcripts in the Massachusetts action in

15

Plaintiff's arguments regarding the propriety of the underlying "attorneys' eyes only" designations are irrelevant to its instant motion. The Protective Order makes clear that "attorneys' eyes only" information shall remain "attorneys' eyes only," and "shall be used solely for the purposes of the prosecution and defense of the above-entitled litigation," until an order of this Court provides otherwise (or Defendants provide permission, which certainly did not happen here).[32] In essence, Plaintiff, when it used

---

connection with her request to, in part, be allowed to use the deposition transcripts in the Massachusetts action.

[32] Plaintiff argues that "until the Court reviews the challenges and makes a determination, the transcripts are not presently *determined* to be confidential or 'attorneys' eyes only'." This is plainly incorrect. As noted supra, the Protective Order provides that "Discovery Material designated as CONFIDENTIAL INFORMATION or ATTORNEYS' EYES ONLY INFORMATION shall be treated by each Receiving Party as confidential according to the category designated for such material unless and until the Court rules to the contrary or the Producing Party or Designating Party, as applicable, agrees otherwise." Protective Order ¶ 4(a). The Protective Order further provides that regarding challenges, "[a]ny document designated "CONFIDENTIAL INFORMATION" or "ATTORNEYS' EYES ONLY INFORMATION" shall enjoy the protection of such designation until the issue relating to the propriety of the designation has been resolved." Protective Order ¶ 8. Most germane to this motion, the Protective Order ultimately provides that "In the absence of written permission from the Producing Party or Designating Party, as applicable, or an order of the Court, any Protected Material consisting of or containing "ATTORNEYS' EYES ONLY INFORMATION" shall be used solely for purposes of the prosecution and defense of the above-entitled litigation…" Protective Order ¶ 4(c).

Taken together, it is beyond peradventure that once a designation is made, notwithstanding any challenge a party may make to the propriety of an "attorneys' eyes only" designation, the disputed information remains "attorneys' eyes only," and thus unusable in any other litigation, until the opposing party provides permission or the Court rules otherwise.

Plaintiff also argues that Defendants "waived" their objections by not substantiating the basis for the "attorneys' eyes only" designation. However, Plaintiff ignores the fact that although the Protective Order explicitly provides that the party *challenging* a designation may waive its challenge, if it does not seek relief from the Court within three days of the opposing party's substantiation of the basis for the designation, the Protective Order does not conversely explicitly provide for the opposing party's waiver of its designation if it fails to substantiate the basis. Indeed, the Protective Order generally favors an initial presumption of confidentiality, as embodied in the language that any confidential material "shall enjoy the protection of such designation until the issue relating to the propriety of the designation has been resolved." Plaintiff also ignores the context of the dispute – i.e., that Defendants, rather than substantiating the line-by-line basis for the "attorneys' eyes only" designations, repeatedly objected to the Court and sought the return of the "attorneys' eyes material" in light of their belief that Plaintiff retained the material and sought to use it in contravention of Orders of this Court, a belief which events showed to be warranted.

Plaintiff also argues that Defendants must embark on a two-step process in which they first designate information as "confidential" before designating it as "attorneys' eyes only," else the material is not protected by the Protective Order – and thus, Plaintiff is presently entitled to use the material in the Massachusetts action, or other litigation, apparently without further order of this Court. See Memorandum of Law in Support of Plaintiff's Motion to Release Transcripts For Use in Continuing Cases, May 7, 2007, at 4, 5-6 ("A designation of information as "Attorneys' Eyes Only" does not obviate the need for the information first to be appropriately designated confidential… Defendants have never even designated the transcripts confidential…. Defendant's word play does not bring the testimony within the ambit of the Confidentiality Order…. [T]he discovery produced in this matter can and should be used in both the Massachusetts litigation… [and] the new New York antitrust action…") This Court is hard pressed to find any language in the Protective Order that supports Plaintiff's construction. Rather, the Protective Order

"attorneys' eyes only" information in Massachusetts, did, to say the least, "jump the gun."

Plaintiff's counsel also suggested that following Plaintiff's voluntary dismissal, this Court's repeated orders to return discovery forthwith concomitantly modified the Protective Order and granted her the ability to use transcripts of these "attorneys' eyes only" depositions in the Massachusetts action. Such a contention strains credulity. I will address Plaintiff's actions, however, in a future opinion regarding Defendants' motion for contempt and sanctions, once such motion is fully briefed.

It is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." AT&T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005), citing S.E.C. v. TheStreet.com, 273 F.3d 222, 230 (2d Cir. 2001). Here, as the Court has entered a protective order and the parties have relied on that order, Plaintiff has not shown at this time a "a showing of improvidence in the grant" or "some extraordinary circumstance or compelling need" that supports modification of the Protective Order. See AT&T Corp. v. Sprint Corp., 407 F.3d at 562, citing Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 296.

I will decline, at this time, to direct Plaintiff to redact from its filings in the Massachusetts action the "attorneys' eyes only" transcripts of depositions taken in this action. See In re Biovail Corp. Securities Litigation, 2007 WL 259933, at *1.[33] I will reserve decision on that sanction, as well as the more serious sanctions, including contempt, requested by Defendants, e.g., an award of costs and attorneys' fees for defending this motion and other motions in this litigation. These sanctions, as well as the branch of Defendant's motion that seeks disqualification of Plaintiff's counsel from the

---

simply defines "attorneys' eyes only" information as a "subset" of confidential information.
Additionally, Plaintiff's argument ignores that Judge Castel ordered the depositions to be "attorneys' eyes only," until further Order of this Court, and that Judge Castel's Order regarding depositions (and their "fruits") was reiterated by this Court on April 6. Presumably, Plaintiff is not arguing that because this Court, rather than Defendants, originally designated the depositions as "attorneys' eyes only," that the depositions somehow lost their "attorneys' eyes only" status by dint of their designation by a higher authority. Such a contention would be risible.

[33] I will, however, transmit to Judge Stearns in Massachusetts a copy of this opinion, so that he may consider appropriate steps to prevent any future misuse of protected information. See In re Biovail Corp. Securities Litigation, 2007 WL 259933, at *1.

Massachusetts action, will abide the fully briefed motion and any hearings that are warranted.

While Lewis Carroll, if regaled with these facts, might write a best seller, I find them quite disturbing. Nonetheless at this time, I impose only two modest sanctions on Plaintiff's counsel. First, notwithstanding the language in the Protective Order that provides that counsel may keep "a copy of all depositions," I will leave in place the directive that Plaintiff's counsel, concomitant with its submission of an opposition to Defendants' motion for contempt and sanctions, shall return to the Court the copy of the deposition transcripts currently in its possession (and any other copies, if such copies are still in Plaintiff's counsel's possession).

Secondly, while not an order, I strongly suggest that Ms. Kristan Peters attend the New York County Lawyers' Association Continuing Legal Education class "Ethical Bounds of Aggressive Litigation," on June 19, 2007, at 8:30 A.M, at 14 Vesey Street, New York, NY 10007.[34] "The very spring and root of honesty and virtue lie in good education." Plutarch, MORALS.

## IV.   CONCLUSION

Plaintiff's motion to modify the Protective Order in this action is DENIED. Accordingly, as the Protective Order provides that "confidential" and "attorneys' eyes only" information may not be used in any other litigation, Plaintiff (and any party in this action) is barred from using such information in any other litigation, including any state, federal, administrative, or arbitration proceeding, and specifically including Wolters Kluwer Financial Services Inc. and CCH Inc. v. Scivantage, Inc. et. al., No. 1:07-cv-10729 (D. Ma.) and Scivantage Inc. v. Wolters Kluwer, N.V., No. 07-cv-3329 (S.D.N.Y.), until further order of this Court.

---

[34] See "Breakfast with NYCLA – Video Replay: Ethical Bounds of Aggressive Litigation – 2007 Update," available at http://www.nycla.org/index.cfm?section=CLE&page=CLE_Detail&itemID=1083&dateID=20070619 (last visited May 16, 2007). Topics to be discussed include "[t]he limits to the unorthodox, but legal, collection of evidence" and "[t]he manner of deceit acceptable in the litigation process." Id.

The Clerk of the Court is directed to close this motion and remove it from my docket.

SO ORDERED.
May 23, 2007
New York, New York

_____
U.S.D.J.

19